HARDY, Judge.
This is a suit by plaintiff husband and wife for the recovery of damages allegedly resulting from injuries sustained by the said wife in a fall on a stairway of an apartment building. The defendants are Mr. and Mrs. D. S. Williams, the owners of the building in which plaintiffs were tenants and their insurer.
Defendants interposed exceptions of no right and no cause of action which were sustained by the district court, which judgment was affirmed by this court. 51 So.2d 830. However, on certiorari, the Supreme Court overruled the exceptions and remanded the case to the district court for further proceedings. 221 La. 364, 59 So.2d 421. After trial on the merits there was judgment in favor of defendants rejecting plaintiffs’ demands, from which plaintiffs bring this appeal.
*10 In or about the year 1946 plaintiffs, George Moses and wife, Myra Moses, rented a downstairs apartment in an apartment building owned by D. S. Williams, at No. 120 Amulet Street in the City of Natchit-oches. Sometime in 1947 plaintiffs moved to an upstairs apartment which was one of two second floor apartments to which access was effected by a stairway leading upward from the first floor of the building. It appears that in order to reach the foot of the stairway it was necessary to pass through the living room and dining room of the Williams apartment on the ground floor. The stairway, described as being “steep and dark”, ascended to a landing from which it branched to the right and left, these divided flights of steps leading to the two upstairs apartments,' the one on the left being occupied by plaintiffs.
Illumination of the stair was afforded by two light fixtures which were controlled by a three-way switch.- The switch at the bottom of the stairway was located on the right wall of the stair and the upstairs switches were upon the walls immediately by the door of each of the upper apartments.
In the Williams apartment, on the ground floor, a bathroom was located immediately to the right and adjacent to the stairway, and this bathroom was used by Mrs. Williams on occasions as a dark room for the purpose of developing films taken in pursuit of her hobby of photography.
Plaintiffs contend that at about 9:00 p. m. on Friday, September 23, 1949, Myra Moses sustained a fall upon the stairway which resulted in a serious injury to her ankle, for which damages are here sought. The circumstances, as urged by plaintiffs, are as follows:
About 5:00 o’clock on the afternoon of the day in question plaintiffs’ son and daughter-in-law and children arrived in Natchitoches for a week-end visit with plaintiffs. Permission had been granted Mrs. Moses for the use of the upstairs apartment on the right side of the stairway by her son and his family during the course of their stay. According to the testimony of Mrs. Moses, at about 9:00 o’clock that night, she left her apartment for the purpose of unlocking the other apartment to permit its use, and in the accomplishment of this purpose she testified that she turned on the light switch located on the wall 'immediately adjacent to the door of her apartment, closed her apartment door, and, to quote her exact testimony:
“I started down and got the second and third steps and the lights went off at the bottom. I was in the process of making another step and I caught my heel and fell.”
Further developing their position plaintiffs assert that the stair lights were turned off by another tenant, ,one Mrs. W. J. Ser-vatius, acting under the specific instructions of the defendant, Mrs. Williams. As reason for this contention plaintiffs rely upon their claim that at the particular time in question Mrs. Williams was developing films in the “dark room” bathroom and had instructed Mrs. Servatius to see that the stair lights were kept off in order that no light .from the same, seeping under the bathroom door, would interfere with her activities.
For reasons which are hereinafter apparent, we think it unnecessary to refer to the alleged contractual obligations as between landlord and tenant in the instant case. We think the issue which is here tendered with reference to liability, vel non, on the part of 'defendants, turns primarily upon the establishment of a purely factual proposition, that is :
“Did the plaintiff, Myra Moses, actually sustain the fall and the resultant injury in the manner contended?”
The only direct testimony bearing upon the alleged accident was given on trial by the plaintiff, Myra Moses. We have above quoted her relation of the incident and later in her testimony she elaborated upon the circumstances to the following extent:
“ — I was in the process of making another step when the light flickered *11 off and I caught my ankle and twisted my ankle and sort of sat down on it.”
Plaintiffs, as above noted, contend that the light was 'turned off by Mrs. Servatius, acting under instructions from Mrs. Williams. Mrs. Servatius asserted that the only occasion upon which she had turned off the stair lights occurred in the latter part of June or the early part of July, 1949; that at the time she was helping Mrs. Williams, who was engaged in developing photographic prints in the bathroom, only to the extent of turning off the stair lights in case they had been left on; that on this particular occasion, observing the stair lights burning, she went to the switch at the foot of the stairway, listened to determine if anyone was using the stairs, and hearing no evidence thereof, turned off the switch.
There were no eyewitnesses to the alleged accident. Mrs. Moses was corroborated by the testimony of her son and daughter-in-law, taken by deposition, but it is evident that neither of these parties had any first-hand knowledge of the occurrence of the incident, their only information obviously having been received from Mrs. Moses herself. It is true that Mrs. Moses, Jr. testified that she took her mother-in-law to the doctor on the morning of September 24th. Dr. Pierson testified that from his office record it appeared he had seen Mrs. Moses as a patient on the morning of September 24th and had bandaged her ankle.
In the first place, the record discloses some considerable' and irreconcilable confusion as to- dates of the alleged accident. It appears that Mrs. Moses first gave another date to the insurance adjuster who interviewed her, which date she later corrected, apparently after consulting with other members of the family. Young Mrs. Moses is quite definite as to the date, giving what appears to be an irrefutable reason for her certainty, that on the particular date she either became aware or first notified her husband's parents of her pregnancy.
, The. date asserted by the members of the Moses family is positively contradicted by the testimony of Mrs. Servatius, also taken by deposition, who contended that the incident in question, of which she had no. first-hand knowledge but which was report-, ed to her, by hearsay, occurred in either the .last.week of June or the first week of July of 1949. Strangely, enough, Mrs. Servatius is able to fix this date with exactness because it was on the said date that she received a long distance telephone call from' her physician which advised that the results of tests performed by the said physician indicated her pregnancy. Far be it from this court tO' attempt to dispute the certainty of any member of the female sex with respect to such a momentous occurrence.
Not only is there confusion as to dates, but there is implicit in the testimony of the witnesses a violent disagreement as to the incident in question. It appears to us to be inconceivable and contrary to all human experience that a woman engaged in descending a stairway could sustain a fall in the course of making one single step subsequent to the turning off of a light switch without making any outcry or, indeed, without the impact of the misstep itself becoming apparent and attracting the notice and attention of the person who had manipulated the switch at the bottom of the stairway only a few feet removed.
The testimony of both Mrs. Williams and Mrs. Servatius is conclusive on the point that no report of the accident was made, until after the lapse of an appreciable period of time, and it appears that no formal claim was made until after the plaintiff, Mrs. Moses, had found- it necessary to undergo a somewhat serious operation upon her ankle.
In connection with the operative procedure on Mrs. Moses’ ankle, we think it is further significant that her orthopedic specialist, Dr.' Macpherson, testified that he attributed the condition of Mrs. Moses’ ankle and the necessity for remedial operative procedure to an old injury which, in his opinion, far antedated the alleged September 23, 1949 incident.
Gathering as best we can from the inconsistent and conflicting testimony the salient *12 features of the instant case, we have concluded that plaintiffs have failed to establish their claims with that degree of certainty and by that preponderance of evidence which is required, and, certainly, we are unable to point out any manifest error in the judgment of the lower court.
For the reasons assigned the judgment appealed from is affirmed at appellant’s cost.